***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is May 18, 2009. *Page 2 
2. On May 18, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On May 18, 2009, an employment relationship existed between the parties.
4. On May 18, 2009, Defendant-Employer employed three or more employees.
5. Defendant-Employer is self-insured. Gallagher Bassett Services is the third party administrator.
6. The parties stipulated to an average weekly wage of $367.79 and a compensation rate of $245.20.
7. Defendant denied Plaintiff's claim.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Various documents, including:
 1. North Carolina Industrial Commission forms and filings;
 2. Plaintiff's medical records;
 c. Stipulated Exhibit Three: Discovery responses;
 d. Stipulated Exhibit Four: Witness statements of Mr. James D. Nance and Mr. Jerry M. Farmer;
 e. Plaintiff's Exhibit One: Correspondence from Plaintiff's counsel to Gallagher Bassett Services dated August 19, 2009 with enclosures;
 f. Plaintiff's Exhibit Two: Photograph of tree stump;
 g. Defendant's Exhibit One: Groundman employment description.
 *********** *Page 3 ISSUES
1. Whether Plaintiff suffered an injury by accident or specific traumatic event on May 18, 2009, and if so, to what workers' compensation benefits is he entitled?
2. If Plaintiff suffered an injury by accident or specific traumatic event, whether it is the cause of Plaintiff's current condition?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 45 years old, with a date of birth of January 15, 1966. Plaintiff completed the eighth grade, and is a resident of the Commonwealth of Virginia. Plaintiff's work history consists of various types of manual labor.
2. Defendant is a company that cuts trees and clears right-of-ways. Duke Energy is Defendant's main contractor. Defendant employs crews of laborers to perform tree pruning, brush removal, and other maintenance work around Duke Energy's power lines.
3. On March 23, 2009, Plaintiff began working for Defendant as a groundman earning $10.00 per hour. Plaintiff's duties involved dragging brush to a chipper truck. Plaintiff used ropes and chainsaws to assist him in dragging brush to be cleared from work sites.
4. Plaintiff typically worked as part of a crew. While pruning and clearing underbrush, the crew would take down saplings or underbrush less than five inches in diameter at chest height and feed this material into a chipper. The crew would remove larger trees with a truck, rope, or climber. A drop zone would be established by the crew where underbrush or saplings were to fall. Defendant instructed its crew members not to enter the drop zone. *Page 4 
5. On May 18, 2009, Plaintiff and his crew were working in Durham, North Carolina near Kent Street clearing saplings and underbrush. The parties offered conflicting evidence concerning the events of this day. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff was dragging brush to a chipper when the top of a falling tree that was approximately twenty feet tall and approximately three to four inches in diameter at the "chest height" level of the tree, hit him across his neck, shoulder, and lower back as he was bent over and knocked him forward. The incident was witnessed by Mr. James Nance, a co-worker who later prepared a written statement. Plaintiff initially felt a little pain in his shoulder, but did not feel he needed medical treatment. He continued to work.
6. Later in the day on May 18, 2009, Plaintiff advised his supervisor and uncle, Mr. Jerry M. Farmer, that a tree approximately three to four inches in diameter hit him. On an unknown date, Mr. Farmer prepared a handwritten statement which corroborated Plaintiff's hearing testimony that he advised Mr. Farmer of his May 18, 2009 work injury on the date that it occurred. The Full Commission finds, based upon the greater weight of the evidence, that Defendant had actual knowledge of Plaintiff's workers' compensation claim as of May 18, 2009.
7. According to Plaintiff, he began experiencing worsening neck and lower back pain approximately one week after the May 18, 2009 work injury, and leg numbness sometime around June 18, 2009. Due to Plaintiff's increasing complaints of pain and numbness, he asked Mr. Farmer if he could see a physician. Mr. Farmer did not authorize him to see a physician, and did not complete an accident report.
8. On July 15, 2009, Plaintiff presented to the emergency department at Memorial Hospital of Martinsville in Martinsville, Virginia with complaints of neck and back pain after being hit by a tree about two months earlier. On July 17, 2009, Plaintiff returned to the *Page 5 
emergency department at Memorial Hospital of Martinsville due to continued neck and back pain. He saw Dr. Jack F. Seavy, an emergency medicine physician, and reported that he had been experiencing neck and back pain since May 2009 and that he was now beginning to experience leg pain and numbness. Dr. Seavy noted no significant findings other than shoulder and upper back tenderness. Plaintiff's cervical and lumbar spine x-rays revealed no evidence of acute injury. Dr. Seavy diagnosed back pain, possibly musculoskeletal and possibly related to disc disease occurring with injury, and wrote Plaintiff out of work for three days, with the understanding that he should return to work on July 20, 2009. However, Plaintiff did not return to work for Defendant-Employer or anywhere else after July 16, 2009.
9. On July 21, 2009, Plaintiff filed a Form 18 giving written notice to Defendant of his workers' compensation claim. The Form 18 lists injuries to Plaintiff's neck, left shoulder, lower back, and right leg as a result of being hit by a tree on May 18, 2009. The Full Commission finds as fact that since Defendant had actual notice of Plaintiff's work-related injury on the same day it occurred and had an opportunity to investigate and to direct medical treatment, Plaintiff had reasonable excuse for not filing his Form 18 until 64 days after his May 18, 2009 work injury, and such delay in providing written notice did not prejudice Defendant.
10. Defendant denied Plaintiff's May 18, 2009 work injury on a Form 61 dated August 17, 2009. Defendant listed as its reason for denial "[i]nvestigation has not yet been completed."
11. On July 27, 2009, Plaintiff presented to Dr. Michael Grant Wenkstern, an orthopaedist, with complaints of neck, back, and knee pain as a result of being hit by a tree. Plaintiff reported that as he was bending forward at work on May 18, 2009, the impact from being hit by the tree twisted and knocked him forward. A physical examination revealed *Page 6 
tenderness in Plaintiff's neck, some pain at the extremes of neck movement, tenderness in the right and middle lower back, and a normal neurologic examination, except for some decreased or altered sensation in the right leg and foot. Dr. Wenkstern diagnosed Plaintiff with a contusion and strain of the neck and lower back with possible irritation of a nerve affecting his right leg, based upon the history provided by Plaintiff and lack of prior significant neck or back injury. Although Dr. Wenkstern did not specifically address tasks that Plaintiff could or could not perform, he did keep Plaintiff out of work, and referred him to physical therapy.
12. On August 17, 2009, Plaintiff returned to Dr. Wenkstern with complaints of continued pain and stiffness in his neck and lower back, as well as numbness, tingling, and weakness in the right leg. A physical examination revealed diffuse bilateral tenderness in the para-cervical muscles, decreased range of motion in the cervical spine with pain throughout, diffuse tenderness of the mid and right lower back, right sacro-iliac joint, and right sciatic notch, positive straight leg raise on the right, some diffuse altered sensation in the right leg, but no focal or motor deficits. Dr. Wenkstern diagnosed cervical and lumbar strain with right radiculitis and continued the physical therapy. In addition, Dr. Wenkstern completed a disability form indicating that Plaintiff had lumbar pain due to an accident occurring on May 18, 2009, that he became unable to work on July 16, 2009, and that his estimated date of return to work would be September 17, 2009, although he was uncertain when Plaintiff would be able to return to work because of his slow recovery.
13. On September 11, 2009, Plaintiff returned to Dr. Wenkstern with continued pain and stiffness in his neck and lower back, as well as numbness, tingling, and weakness in his right leg that he reported as "no better than one month ago." Plaintiff's physical examination was essentially the same except for a new finding of a slight limp on the right. Dr. Wenkstern *Page 7 
recommended obtaining magnetic resonance imaging (MRI) to evaluate possible nerve root irritation affecting the right leg. Plaintiff was unable to pay for the MRI.
14. On October 23, 2009, Plaintiff presented to Dr. Wenkstern reporting that his neck complaints were no better, his back "hurts a little bit more," and that he continued to have weakness and numbness in his right leg. Plaintiff also had a new complaint of occasional tingling in two fingers in his left hand. A physical examination revealed a stiff neck with decreased range of motion and some diffuse bilateral para-cervical tenderness, and altered sensation in the right leg and ulnar left hand. Dr. Wenkstern continued to diagnose cervical and lumbar strain with possible intermittent nerve irritation, and kept Plaintiff out of work.
15. On December 4, 2009, Plaintiff returned to Dr. Wenkstern and reported no change in his neck and lower back condition from the previous visit. Dr. Wenkstern's diagnosis remained the same, except that he now questioned whether Plaintiff had a herniated disc or nerve impingement. In terms of ongoing treatment recommendations, Dr. Wenkstern noted that "[i]n view of his lack of funding we put MRI scan plans on hold for now, favoring continued rest, a home exercise program, leave of absence from work," and medication refills. Plaintiff's December 4, 2009 visit with Dr. Wenkstern was the last one prior to the closing of the record.
16. At Dr. Wenkstern's deposition, he opined that the symptoms Plaintiff reported to him and that he treated "likely did relate to the injury he described." Dr. Wenkstern was also of the opinion that the size of the tree would not change his opinion that the tree falling on Plaintiff likely caused the symptoms that he treated. According to Dr. Wenkstern, the twisting motion that Plaintiff described and the actual fall itself "could have as much to do with it as the impact," and if Plaintiff simply turned, twisted, and fell down in an effort to avoid the tree, this "could strain his neck and back" without ever actually being hit by the tree. Dr. Wenkstern further *Page 8 
opined that the numbness and tingling associated with spinal injuries can happen "either right away or any time after" the injury.
17. With respect to the issue of Plaintiff's ongoing disability, Dr. Wenkstern stated that he gave Plaintiff "temporary total disability basically[;] he is on medical leave pending resolution or improvement of his symptoms." Although Dr. Wenkstern also agreed that he would consider approving employment for Plaintiff "in a very light work category," he further explained that this "would depend partly obviously on what the work was, how strenuous it is, and also on how much he was required to take the narcotic pain med or the muscle relaxer, too, which might make it unsafe to be at work." Moreover, Dr. Wenkstern indicated that his approval of light-duty work for Plaintiff would be "on a trial basis," but since "that hasn't been presented . . . it is a non-issue in my opinion." The Full Commission gives great weight to the opinion testimony of Dr. Wenkstern on the issue of disability.
18. At Dr. Seavy's deposition, he indicated that he could not opine to a reasonable degree of medical certainty whether Plaintiff's May 18, 2009 work injury caused the symptoms that he treated approximately two months later on July 17, 2009. On average, Dr. Seavy felt that if a patient complained of being hit by a big tree, they would not wait two months to seek treatment. Dr. Seavy was also of the opinion that the average period for symptoms to manifest in trauma-related injury, based upon his experience, was between four and six weeks.
19. The Full Commission gives greater weight to the opinion testimony of Dr. Wenkstern over any contrary opinions of Dr. Seavy, who only saw Plaintiff once in the emergency department. Dr. Wenkstern has been treating Plaintiff continuously since July 27, 2009 and he specializes in the treatment of musculo-skeletal disorders, including disorders of the spine. *Page 9 
20. The Full Commission finds as fact that Plaintiff's testimony concerning the nature and circumstances giving rise to his May 18, 2009 work injury is credible. The Full Commission finds as fact that on May 18, 2009, Plaintiff sustained a compensable injury by accident and/or a specific traumatic incident of the work assigned to him by Defendant-Employer when a falling tree hit him on his neck, shoulder, and lower back while he was bent over, and knocked him forward. Plaintiff's injuries arose out of and in the course of his employment, required ongoing medical treatment and resulted in his removal from work by Dr. Wenkstern.
21. Plaintiff is not at maximum medical improvement with respect to his May 18, 2009 work injury.
22. Plaintiff demonstrated by the greater weight of the evidence that as a result of his May 18, 2009 work injury he has been incapable of working in any employment since July 16, 2009. As of the date of Dr. Wenkstern's deposition, he was of the opinion that Plaintiff was unable to work as of July 16, 2009, and he had not released Plaintiff to return to work.
23. The medical treatment Plaintiff received from Dr. Seavy and Dr. Wenkstern with respect to his May 18, 2009 work injury was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability with respect to his work injury.
24. The Full Commission finds, based upon the greater weight of the evidence, that Dr. Wenkstern should be designated as Plaintiff's authorized treating physician.
25. As a result of Plaintiff's May 18, 2009 work injury and causally related condition, Plaintiff has been unable to earn wages in any employment from July 16, 2009 through the present.
26. The Full Commission finds, based upon the greater weight of the evidence, that Defendant had reasonable grounds to defend this claim, as the medical and other evidence was in *Page 10 
dispute as to whether Plaintiff sustained a compensable injury by accident and/or specific traumatic incident of the work assigned, and whether he continues to be disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 18, 2009, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment, and/or a specific traumatic incident of the work assigned to him by Defendant-Employer as a result of being hit by a falling tree on his neck, shoulder, and lower back, thereby injuring his neck and lower back. N.C. Gen. Stat. § 97-2(6) (2010).
2. Plaintiff is not at maximum medical improvement with respect to his May 18, 2009 work injury and is in need of future medical treatment. N.C. Gen. Stat. § 97-25.1 (2010).
3. The medical treatment Plaintiff received with respect to his May 18, 2009 work injury was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendant is obligated to pay for such treatment. Dr. Wenkstern is hereby designated as Plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1 (2010).
4. Plaintiff proved that he was medically disabled from work from July 16, 2009 through the present and continuing. On July 17, 2009, Dr. Seavy took Plaintiff out of work until July 20, 2009. On August 17, 2009, Dr. Wenkstern completed a disability form indicating that Plaintiff became unable to work on July 16, 2009, and that his estimated date of return to work would be September 17, 2009. Dr. Wenkstern continued to keep Plaintiff out of work through December 4, 2009, the date of his last visit with Plaintiff, and as of the date of his deposition, he *Page 11 
was continuing to keep Plaintiff out of work. Therefore, Plaintiff is entitled to temporary total disability compensation in the amount of $245.20 per week from July 16, 2009 through the present and continuing. N.C. Gen. Stat. § 97-29 (2010); Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. Plaintiff had reasonable excuse for not filing his Form 18 injury claim until 64 days after his May 18, 2009 work injury, as Defendant had actual knowledge of Plaintiff's workers' compensation claim on the date that it occurred, and it took several weeks for Plaintiff's symptoms to worsen to the point where he needed to seek medical treatment. Plaintiff's delay in providing written notice did not prejudice Defendant as Defendant had an opportunity to direct medical treat and to investigate the accident from the date of occurrence. N.C. Gen. Stat. § 97-22 (2010); Gregory v. W.A.Brown Sons, 363 N.C. 750, 688 S.E.2d 431 (2010).
6. Defendant had reasonable grounds to defend this claim. N.C. Gen. Stat. § 97-88.1 (2010).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $245.20 per week from July 16, 2009 through the present, and continuing until further Order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum. *Page 12 
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's May 18, 2009 work injury for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel, to be deducted and paid directly to Plaintiff's counsel from the accrued compensation due Plaintiff and thereafter by paying every fourth compensation check due Plaintiff directly to his counsel.
4. Defendant shall pay the costs of these proceedings.
This the ___ day of February 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER